UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK MATHES, SR., *et al.,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-3664 |
| | § | |
| PATTERSON-UTI DRILLING | § | |
| COMPANY L.L.C., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

MEMORANDUM OPINION & ORDER

Pending before the court are defendants, Denbury Onshore, L.L.C. and Patterson-UTI Drilling Company, L.L.C.'s motions for summary judgment pertaining to all of plaintiffs' claims (Dkts. 27, 30, 31). After considering the motions, responses, record evidence, and applicable law, the court is of the opinion that defendants' motions should be GRANTED and all of plaintiffs' claims dismissed.[1]

I. BACKGROUND

This case involves the alleged negligence and gross negligence liability of the owner of an oil and gas lease in North Dakota and its drilling contractor. Specifically, Denbury Onshore L.L.C. ("Denbury") owned the oil and gas lease at the site of the GV 44-32NH well.[2] Denbury contracted with Patterson-UTI Drilling Company L.L.C. ("Patterson") to provide a drilling rig and drilling services.[3] Patrick Mathes, Sr. ("Mathes") was employed by Ryan Directional Drilling Services

---

[1] Plaintiffs' motion for oral argument (Dkt. 46) is denied as moot.

[2] Dkt. 30, Ex. B, Deposition of James Kramer ("Kramer Depo") at 21-22.

[3] Dkt. 35, Ex. I.

("Ryan") at the time of the incident.[4]  Ryan was contracted by Denbury to perform directional drilling services at the well.[5]

On September 12, 2012, the wind blew up a tear in the plastic liner covering the ground surface at the well site, tripping Mathes and causing injury to his leg.[6]  Mathes and his wife, Rema Mathes (collectively "plaintiffs"), filed suit against Denbury and Patterson for their alleged negligence and gross negligence for failing to maintain a safe workplace.  Specifically, the plastic liner was purchased by Denbury and installed by DuSonn Contract Services[7] to contain fluids that could be spilled during drilling operations.[8]  Mathes maintains that, in the area where he tripped, the liner was not necessary to contain fluids, and further, that neither Denbury nor Patterson properly inspected or maintained the liner to avoid accidents.[9]  Mathes claims that he specifically told Patterson and Denbury representatives about another tear in the same area of the same liner,[10] but concedes it was not the tear which caused his injury.[11]  Patterson repaired previous tears in the liner and instructed its employees to periodically inspect the liner.[12]  Thus, according to plaintiff, Denbury

---

[4]  Dkt. 30, Ex. E, Deposition of Patrick Mathes, Sr. ("Mathes Depo") at 38-39.

[5]  Kramer Depo at 15; Dkt. 30, Ex. D, Deposition of Jim Drader ("Drader Depo") at 51-54.

[6]  Mathes Depo at 35-36, 127, 133-36.

[7]  DuSonn Contract Services, L.L.C. is not a party to this suit, but was previously designated a responsible third party.  Dkt. 18.

[8]  Dkt. 31, Ex. A, Deposition of Mark Cullifer ("Cullifer Depo") at 15; Kramer Depo at 25.

[9]  *Id.* at 58-59; Dkt. 32, Ex. G, Deposition of John Hearitage ("Hearitage Depo") at 79-80.

[10]  Mathes Depo at 114-16, 119.

[11]  *Id.* at 128-29.

[12]  Hearitage Depo at 40-43, 70.

and Patterson had reason to know that tears were likely to occur in the liner and had a duty to plaintiff to inspect and maintain the liner.

Denbury filed a motion for summary judgment on plaintiffs' negligence claims and Mrs. Mathes's claims.  Denbury argues that Chapter 95 of the Texas Civil Practice and Remedies Code bars plaintiffs' action.  Relevant to this dispute, Chapter 95 limits the liability of a property owner for personal injury to an employee of a contractor unless the owner retained some control over the contractor's work and actually knew of the danger, but failed to provide adequate warning.  TEX. CIV. PRAC. & REM. CODE § 95.003.  Further, because Mathes cannot sustain his negligence claim, Denbury asserts that his gross negligence claim and Mrs. Mathes's claim for loss of consortium likewise fail.

Patterson also filed a motion for summary judgment challenging plaintiffs' proof as to each element of their negligence claim.  Patterson maintains, as a separate independent contractor of Denbury, it had no duty to Mathes, and further did not breach any alleged duty or cause Mathes's injuries.  Patterson asserts the same arguments as Denbury with respect to plaintiffs' gross negligence and Mrs. Mathes's claims.

In response, plaintiffs challenge defendants' application of Texas law and argue that North Dakota law should apply as the jurisdiction with the most significant relationship to the incident. Plaintiffs assert that under either Texas or North Dakota law, however, they have shown a factual dispute regarding the negligence of Denbury, as owner of the well site, and of Patterson, as the supervising contractor at the well.  According to plaintiffs, Denbury unnecessarily installed a known hazard in an area where the plastic liner was likely to get torn and where personnel frequently walked.  And, Patterson was responsible for safety at the site and its heavy equipment operators

3

should have inspected the area after conducting heavy equipment operations.  Thus, plaintiffs argue

Patterson knew of the potential danger with liner and did not adequately inspect the liner for tears.

## II.  LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a); *see*

*also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The moving party bears

the initial burden of informing the court of all evidence, if any, demonstrating the absence of a

genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548

(1986).  Only when the moving party has met its initial burden does the burden shift to the non-

moving party to demonstrate that there is a genuine dispute of material fact.  *Id.* at 322.  A dispute

is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire*

*& Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).  A dispute is "material" if its resolution

could affect the outcome of the action.  *Anderson*, 477 U.S. at 248.

## III.  ANALYSIS

### A.    Waiver

Defendants argue that plaintiffs waived their right to assert the application of North Dakota

law by waiting until filing their response to summary judgment to assert this position.  Under federal

pleading standards, a party is not required to plead the applicability of foreign law to preserve a

choice-of-law question.  *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987).

Additionally, a party is not required to prove in federal court the content of another state's law or

show that it differs from Texas law because federal courts are expected "to take judicial notice of

4

the content of the laws of every state in the Union." *Id.* However, a party does have an obligation to call the applicability of another state's law to the court's attention in time to be properly considered. *Id.* (finding no waiver when choice-of-law issue was first raised in motion to dismiss); *ARV Offshore Co., Ltd. v. Con-Dive, L.L.C.*, 2012 WL 176322, at *6 (S.D. Tex. Jan. 20, 2012) (finding waiver when choice-of-law issue first raised in post-trial briefing and party failed to include issue in joint pretrial order); *Robbins Hardwood Flooring, Inc. v. Bolick Distributors Corp.*, 2003 WL 21730142, at *2 (N.D. Tex. Mar. 18, 2003) (allowing choice-of-law argument first presented in response to motion for summary judgment).

Under the circumstances of this case, the court does not find that plaintiffs were untimely or waived their right to assert the applicability of North Dakota law. The instant dispositive motions were the first substantive motions presented to this court for consideration and the first opportunity for plaintiffs to present their arguments. Further, Denbury clearly was on notice that North Dakota law may be an issue in the case because it was the first to address North Dakota law in its motion for summary judgment.[13] Lastly, the court has adequate time to consider this issue before docket call. Therefore, the court finds that plaintiffs have not waived their right to assert North Dakota law.

### B.      Conflict of Laws

While plaintiffs urge the court to apply North Dakota law, defendants contend that plaintiffs have failed to show a genuine conflict exists between North Dakota and Texas law such that a conflict of laws analysis is appropriate. Defendants maintain that plaintiffs have also failed to meet their burden demonstrating that North Dakota has the most significant relationship to this case. To determine which state's substantive laws control, the court must follow the choice-of-law principles

---

[13] Dkt. 27 at 13 n.1.

of the forum state.  *Kucel*, 813 F.2d at 73.  Under Texas law, the burden is on the party asserting the application of foreign law to first show the existence of a true conflict of laws and then to demonstrate which law should apply based on state contacts to the asserted claims.  *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex. App.–Houston [14th Dist.] 2004, no pet.).  Absent a meaningful difference between the laws, Texas law will apply.  *Id.*  Which state's law governs is a question of law for the court to decide.  *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000).

Plaintiffs correctly assert that there is an apparent conflict between the negligence jurisprudence in North Dakota and Texas because North Dakota law has no analogue to Texas's Chapter 95 standard.  Defendants stridently argue for the application of Texas law and Chapter 95 in this case likely because it provides greater limits on the liability of property owners for injuries sustained by employees of independent contractors.  Specifically, North Dakota applies common law principles of negligence; whereas, Texas has adopted a separate statutory framework setting out additional liability limitations for employers of independent contractors related to workplace safety.

A brief comparison of the relevant legal standards demonstrates the conflict that exists between the two states.  In particular, in North Dakota "negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty."  *Grewal v. N.D. Ass'n of Counties and Nw. Contracting, Inc.*, 670 N.W.2d 336, 339 (N.D. 2003).  However, an employer of an independent contractor is generally not liable for the acts or omissions of the independent contractor. *Id.*  North Dakota courts have adopted an exception to this general rule as set forth in the Restatement (Second) of Torts § 414, which establishes liability for an employer if the employer

6

retains the right to control the method, manner, and operative detail of the independent contractor's work. *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445, 448 (N.D. 1994). Certain elements of these general principles are subsumed within Chapter 95 of the Texas Civil Practices and Remedies Code, but Texas law goes further to limit the liability of employers and create additional proof requirements for tort claimants. Specifically, section 95.003 related to "Liability for Acts of Independent Contractors" provides:

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:
>
> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM. CODE § 95.003. The primary difference under Texas law, besides the specificity of the persons, actions, and location covered by the Texas statute, includes plaintiff's burden to show that the property owner had actual knowledge of the danger or condition resulting in the injury and failed to adequately warn plaintiff of that danger. *See Montoya v. Nichirin-Flex, U.S.A., Inc.*, 417 S.W.3d 507, 511 (Tex. App.–El Paso 2013, no pet.) (plaintiff has burden to establish owner exercised or retained some control over manner in which work was performed and that owner had actual knowledge of danger and did not adequately warn of that danger). Thus, the court recognizes a conflict between the negligence laws of North Dakota and Texas, which could meaningfully affect defendants' liability in this case.

Since the court has determined that a conflict between the laws exists, now it must assess the relation of the contacts to the asserted claims.  As the forum state, Texas has adopted the "most significant relationship" test, providing that "in all choice of law cases, . . . the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Kucel*, 813 F.2d at 73 (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)).  Specifically, the Texas Supreme Court utilizes the factors set out in sections 6 and 145 of the Restatement (Second) of Conflict of Laws for purposes of determining the most significant relationship in tort cases. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979).

Section 6 of the Restatement lists the general principles which guide the application of the more specific rules, as follows:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
>
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,
>>
>> (f) certainty, predictability and uniformity of result, and
>>
>> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6.

Section 145 of the Restatement provides that "[t]he rights and liabilities of the parties with

8

respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." The specific contacts to be considered in tort cases are:

> (a) the place where the injury occurred,

> (b) the place where the conduct causing the injury occurred,

> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

> (d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2). Further, in tort cases, while the situs of the injury is not dispositive of which law should apply, "[t]he applicable law will usually be the local law of the state where the injury occurred." *Id.* § 156(2); *Gutierrez*, 583 S.W.2d at 318. On the other hand, the state of incorporation or location of the defendant's principal place of business receives less weight than the place of the injury in the choice-of-law analysis. *Hooper v. Marriott Int'l, Inc.*, 979 F. Supp. 2d 735, 741 (N.D. Tex. 2013); *Beatty v. Isle of Capri Casino, Inc.*, 234 F. Supp. 2d 651, 656 (E.D. Tex. 2002). Ultimately, however, the result does not depend on the number of contacts, but rather, the qualitative nature of those contacts with each jurisdiction. *Crim v. Int'l Harvester Co.*, 646 F.2d 161, 163 (5th Cir. 1981).

In this case, Patterson and Denbury have their principal places of business or conduct business in Texas,[14] and plaintiffs are citizens of Mississippi.[15] All of the remaining contacts relevant to this controversy are located in North Dakota. Denbury owned the lease on real property

---

[14]  Cullifer Depo at 12; Dkt. 21.

[15]  Mathes Depo at 6-7.

in North Dakota.  It operated its business enterprise under the laws and regulations of North Dakota and hired independent contractors for the purpose of drilling the well in North Dakota.  Ryan and Patterson also performed such drilling operations in North Dakota.  The claims in the lawsuit stem from Mathes's relationship with defendants, which was formed in North Dakota.  And, the alleged tortious conduct and place of injury all occurred in North Dakota.

The general factors and policy considerations set out in the Restatement also dictate that, for purposes of certainty, uniformity, and predictability, defendants should be subject to the laws of North Dakota for its actions in North Dakota.  North Dakota has established laws related to the negligence of employers and has a "specific interest" in defining the duty that employers owe employees or contractors performing work within North Dakota.  *See Crim*, 646 F.2d at 163 (finding relevant policy considerations weigh in favor of applying law at situs of land because Arizona landowners should not be subjected to different legal duties depending on an invitee's state of residence).  In this case, North Dakota has the majority of contacts, including "the place where the injury occurred," "the place where the conduct causing the injury occurred," and "the place where the relationship . . . between the parties is centered."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2).  In contrast, Texas has very little connection to this controversy other than the principal places of business of the defendants, which receive less weight than the place of injury. Therefore, the court concludes that North Dakota law should apply to determine defendants' liability.

### C.    Negligence

#### i.    *Denbury*

Denbury moves for summary judgment on plaintiffs' negligence claim, arguing that it did not have a duty to Mathes, as an employee of an independent contractor, because it did not retain

control of the work performed by Ryan or Patterson.  Plaintiffs contend that the retained control doctrine relied upon by Denbury does not apply, but rather Denbury, as the property owner, had a duty to maintain a safe workplace for all employees under premises liability law.

Under North Dakota law, a plaintiff must show that the defendant has a duty to protect the plaintiff from injury to establish a claim for negligence.  *Grewal v. N.D. Ass'n of Counties and Nw. Contracting, Inc*., 670 N.W.2d 336, 339 (N.D. 2003) ("Negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty."); *Rogstad v. Dakota Gasification Co.*, 623 N.W.2d 382, 385 (N.D. 2001).  The existence of a duty is generally a question of law for the court to decide.  *Grewal*, 670 N.W.2d at 339.  However, if the existence of a duty depends on the resolution of factual issues, those issues must be resolved by the trier of fact.  *Id.*  "If no duty exists, there is no negligence."  *Rogstad*, 623 N.W.2d at 385.

An employer of an independent contractor is generally not liable for the acts or omissions of the independent contractor.  *Grewal*, 670 N.W.2d at 339.  However, North Dakota courts have adopted an exception to this general rule, known as the retained control doctrine, under section 414 of the Restatement (Second) of Torts.  *Rogstad*, 623 N.W.2d at 385.  Section 414 provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414.  According to plaintiffs, however, Denbury should not be subject to the retained control doctrine, but rather should be held accountable for its own negligence.  Specifically, plaintiffs argue Denbury should be treated as an ordinary landowner, which "owe[s] a general duty to lawful entrants to maintain their property in a reasonably safe condition

11

. . . [and] must take reasonable measures to prevent injury to those whose presence on the property reasonably can be foreseen." *Fast v. State of N.D.*, 680 NW.2d 265, 268 (N.D. 2008).  Plaintiffs maintain that the relevant issue in this case is not whether Denbury retained control over the work of its independent contractors, but whether Denbury was responsible for its premises and the damaged liner.

North Dakota courts, however, have rejected similar attempts by plaintiffs to base their causes of action for unsafe work conditions on general premise liability principles.  For example, in *Armes v. Petro-Hunt, L.L.C.*, plaintiff, an employee of an independent contractor, brought a negligence claim against the owner of an oil and gas well where plaintiff was injured when an explosion occurred.  *Armes*, 2012 WL 1493740, at *1 (D.N.D. Apr. 27, 2012).  Plaintiff argued, under a premise liability theory, that "Petro-Hunt owned or had control over the worksite where [plaintiff] was injured," and that "Petro-Hunt failed to make the worksite safe or failed to provide an adequate warning regarding obvious dangers on the worksite." *Id.* at *2.  Relying on several cases decided by the North Dakota Supreme Court, the court found that North Dakota had established "a clear policy against permitting employees of independent[ ] contractors to sue the employer [of the independent contractor] for work-related injuries." *Id.*  On this basis, the court held that plaintiff's premise liability argument was not viable.  *Id.* at *3.

Similarly, plaintiffs' claim here is factually analogous to another considered by the Supreme Court of North Dakota in *Pechtl v. Conoco, Inc.*, 567 N.W.2d 813 (N.D. 1997).  In *Pechtl*, Conoco hired Steier to do oilfield work as an independent contractor.  *Id.* at 815.  The parties agreed that the work site was unusually muddy and pipes were often left lying around.  *Id.*  On the work site, plaintiff, an employee of Steier, injured his foot when he caught it between two pipes and slipped

12

on the wet, irregular ground surface. *Id.* Plaintiff argued that Conoco retained control over the independent contractor's work, and alternatively, had a non-delegable duty to maintain the workplace in a safe condition. *Id.* The court rejected both arguments. First, the court determined that Conoco did not retain control over the operative detail of the independent contractor's work. *Id.* at 817. With respect to plaintiff's argument that Conoco had a duty to provide a safe workplace, the court noted that the analysis is different when the case involves hazardous conditions on land posed to members of the general public versus employees of independent contractors at a workplace, and determined that the resolution of the issue was based on retained control under section 414 of the Restatement. *Id.* at 818-19 (citing *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445 (N.D. 1994)).

This court must adhere to clear North Dakota precedent, which precludes an employee of an independent contractor from bringing a claim of negligence against a property owner for an injury allegedly caused hazards at the employer's worksite under principles of premise liability. *See e.g.*, *Rogstad v. Dakota Gasification Co.*, 623 N.W.2d 382, 385 (N.D. 2001) (holding property owner did not retain right to control independent contractor's work such that it owed a duty to independent contractor's employee); *Kristianson v. Flying J Oil & Gas, Inc.*, 553 N.W.2d 186, 189 (N.D. 1996); *Fleck*, 522 N.W.2d at 448. Rather, relevant to this case, the only way Denbury would have a duty to Mathes is if it controlled the means, manner, or operative detail of the work performed by Ryan or Patterson. Plaintiffs unequivocally maintain that the retained control doctrine does not apply, and therefore, have presented no arguments or evidence supporting a finding that Denbury controlled the work of either of its independent contractors in this case.

The evidence that has been presented shows that Denbury, in fact, did not exercise or retain control over the operative details of Ryan or Patterson's work.  Mathes conceded that Denbury did not control the operative details of Ryan's work or the method and manner in which he performed the directional drilling.[16]  Denbury provided the plans to Mathes regarding the location and direction of the hole, but it was the responsibility of Mathes to determine how to carry out that plan.[17]  *Grewal*, 670 N.W.2d at 340 (provision of construction plans and specifications does not constitute adequate control over operative detail of contractor's work).  In fact, Mathes had specialized knowledge that precluded Denbury personnel from performing this type of operation.[18]  Denbury's company man and Patterson's Vice President also testified that Patterson was only responsible for overseeing its employees and drilling operations.[19]  Like Ryan, Patterson was provided a drilling plan to follow by Denbury, but Patterson determined the means, manner, and method by which it would drill the well.[20]  Further, with respect to the plastic liner, Denbury only purchased the liner, and Patterson controlled the details regarding any repairs to be made.[21]  Denbury would inspect the repairs once they were complete.[22]  *See Fleck*, 522 N.W.2d at 449 (a duty is not created when employer has general right to inspect work progress).  Thus, plaintiffs have failed to establish a genuine issue of

---

[16]  Mathes Depo at 90-92.

[17]  *Id.* at 27-28, 89.

[18]  *Id.* at 94-95.

[19]  Cullifer Depo at 33; Dkt. 32, Ex. I, Deposition of Ricky Clampet ("Clampet Depo") at 9.

[20]  Hearitage Depo at 19-20.

[21]  Clampet Depo at 58-59.

[22]  *Id.*

material fact as to Denbury's retention or exercise of control over its independent contractors. Because Denbury did not owe a duty to Mathes, plaintiffs' negligence claim fails as a matter of law.

       *ii.*     *Patterson*

      Plaintiffs also contend that Patterson, as supervisor of drilling operations and the work site, had a duty to Mathes to inspect and maintain the liner. Patterson counters that it was a separate independent contractor of Denbury, and it did not have an obligation for safety at the well site or owe a duty to Mathes. Plaintiffs rely on *Grewal* for the proposition that an independent contractor or subcontractor may be liable for its own negligence to all who may be foreseeably injured by the conditions at a work site. *Grewal*, 670 N.W.2d at 342. However, *Grewal* is distinguishable from the instant case. Specifically, the independent contractor in *Grewal* hired its own subcontractor, and the court was asked to consider the independent contractor's liability with respect to its own subcontractor's acts. Plaintiffs ignore the North Dakota Supreme Court's reasoning that the retained control doctrine set out in section 414 of the Restatement applied to the employer/contractor relationship between the independent contractor and its subcontractor. *Id.* (holding that the evidence raised a fact question as to whether the independent contractor "retained a right of supervision of the operative details of the construction site to the degree necessary to impose a duty"). Here, it was Denbury who contracted with Ryan, not Patterson. Because Patterson was not the employer of Ryan, the principles set out in section 414 of the Restatement would not apply, nor would the *Grewal* decision.

      Plaintiffs also argue that, under the terms of the Contract with Denbury, Patterson had a contractual duty to enforce Denbury's Health, Safety, and Environmental Guidelines. Dkt. 35, Ex. 9. Plaintiffs misconstrue the evidence. Patterson was required to "adhere" to and "expected to

15

comply with" Denbury's Health, Safety, and Environmental Guidelines, not enforce them.  *Id.*
Patterson was not responsible for safety at the work site.  Plaintiffs also cite to other safety
publications regarding the responsibilities of rig supervisors; however, they are not relevant to
whether or not a duty is imposed on Patterson for the safety of another independent contractor's
employee.

In sum, plaintiffs' arguments related to Patterson's duty to Mathes are unfounded.  Patterson
could not have incurred a duty under the principles of retained control because Patterson did not
employ Ryan.  Further, Patterson could not be held liable under a premise liability theory because
it was not the property owner.  *Doan v. City of Bismarck*, 632 N.W.2d 815, 820 (N.D. 2001).
Therefore, plaintiffs' negligence claim fails with respect to Patterson, as a matter of law, because
Patterson did not owe a duty to Mathes.

### D.    Remaining Claims

Because the court has found that defendants did not have a duty to Mathes necessary to
sustain his negligence claim, Mrs. Mathes's claim for loss of consortium is also barred.  *Milde v.
Leigh*, 28 N.W.2d 530, 534 (N.D. 1947).  Plaintiffs concede that Mrs. Mathes is not entitled to
damages for her remaining claims of loss of enjoyment of life and loss of support.  Dkt. 32 at 18.
Finally, if no duty exists, the court need not consider plaintiffs' claim of gross negligence against
defendants.

## IV. CONCLUSION

Plaintiffs have failed to establish a genuine issue of material fact that either defendant owed Mathes a duty as an employee of an independent contractor under North Dakota law.  Therefore, Denbury Onshore, L.L.C. and Patterson-UTI Drilling Company, L.L.C.'s motions for summary judgment (Dkts. 27, 30, 31) are GRANTED, and all of plaintiffs' claims are dismissed with prejudice.  The court will enter a separate final judgment in accordance with this opinion.

It is so ORDERED.

Signed at Houston, Texas on August 27, 2014.

_____
Gray H. Miller
United States District Judge

17